1   Sean D. Beatty (Bar No. 155328)
2   John W. Myers IV (Bar No. 179975)
    DEMLER, ARMSTRONG & ROWLAND, LLP
3   4500 E. Pacific Coast Highway, Fourth Floor
    Long Beach, California 90804-3298
    Telephone: (562) 597-0029
4   Fax: (562) 494-3958

5

6   Attorneys for defendant Toyota Motor Sales, U.S.A., Inc.

7

8                 UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  DAVID ORTEGA,                    )  NO.   08 CV 0724 DMS WMc
                                     )
12              Plaintiff,           )  Date:       July 25, 2008
                                     )  Time:       1:30 p.m.
13         vs.                       )  Courtroom:  10
                                     )  Judge:      Hon. Dana M. Sabraw
14  TOYOTA MOTOR SALES, USA,         )  Magistrate: Hon. William McCurine, Jr.
    INC.,                            )
15                                   )  **DEFENDANT TOYOTA MOTOR
                Defendant.           )  SALES, U.S.A., INC.'S NOTICE OF
16                                   )  MOTION AND MOTION TO
                                     )  DISMISS PLAINTIFF'S CAUSE OF
17                                   )  ACTION FOR CONVERSION, FOR
                                     )  FAILURE TO STATE A CLAIM
18                                   )  UPON WHICH RELIEF CAN BE
                                     )  GRANTED (FRCP 12(b)(6));
19                                   )  MEMORANDUM OF POINTS AND
                                     )  AUTHORITIES**
20                                   )
    _____)  Complaint Filed:   April 21, 2008
21                                   )  Trial Date:        None

22  TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD:

23         PLEASE TAKE NOTICE that on July 25, 2008, at 1:30 p.m., or as soon

24  thereafter as the matter may be heard in Courtroom 10 of the above-entitled court,

25  located at 940 Front Street, San Diego, CA 92101, defendant Toyota Motor Sales,

26  U.S.A., Inc. ("TMS"), will move this court for an order pursuant to FRCP 12(b)(6)

27  dismissing plaintiff's sixth Cause of Action, for conversion, for failure to state a

28  claim upon which relief can be granted.

1   This motion is based upon this notice, the attached memorandum of points

2   and authorities, and upon such oral and documentary evidence as may be

3   presented at the hearing of this motion.

4

5   Dated: June 17, 2008         DEMLER, ARMSTRONG & ROWLAND, LLP

6

7                                /s/ John W. Myers IV

8                                SEAN D. BEATTY
                                 JOHN W. MYERS IV

9                                Attorneys for defendant Toyota Motor Sales,
                                 U.S.A., Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS & AUTHORITIES

1.    **INTRODUCTION AND SUMMARY OF ARGUMENT.**

This is a Lemon Law case brought by plaintiff David Ortega, against defendant TMS.  Plaintiff contends that his 2006 Toyota/Scion tC suffers from problems with the check engine light illuminating, engine noise, burning oil, transmission grinding, and engine seizure.  Ortega sues TMS for violations of the (Federal) Magnuson-Moss Act and the (California) Song-Beverly Act (also referred to as the Lemon Law).  He also sues for conversion, seeking general and punitive damages.

Found at California Civil Code section 1793.2, et seq., the Song-Beverly Act generally sets forth a vehicle manufacturer's obligations to maintain repair facilities, to repair vehicles to conform to applicable warranties, and to repurchase or replace vehicles that cannot be conformed to applicable warranties.  Damages recoverable in a Lemon Law case include restitution (refund of the purchase price, monthly loan or lease payments, sales tax, registration, lien payoff, and the like), incidental and consequential damages (rental car or towing charges, for example), attorney's fees and costs, and (if there has been a "willful" violation of the Act) a civil penalty.  (California Civil Code section 1794.)

Plaintiff's conversion cause of action should be dismissed for two main reasons.  First, and most fundamentally, there can be no conversion of a "general" amount of money, especially an amount of money that is merely a contingent recovery in a contested lawsuit.  (Even the case cited by plaintiff *in his own complaint* (paragraph 39, page 9, lines 2-3), goes against him in this regard.)  Second, it would allow plaintiff to do an "end run" around the limitations on damages for a Song-Beverly Lemon Law claim.

If plaintiff truly had a conversion claim, based on something different from, or in addition to, his warranty/Lemon Law claim, then the situation might be

1    different.  But in this case, the facts underlying the conversion claim consist of

2    nothing more than the Lemon Law violation.

3

4    2.    **THERE CAN BE NO CONVERSION OF MONEY UNDER THE**

5    **FACTS STATED, WHERE THE MONEY CONSISTS OF A CONTINGENT**

6    **LAWSUIT RECOVERY.**

7         It is hornbook law that conversion is the wrongful exercise of dominion

8    over the personal property of another.  (*Farmers Ins. Exchange v. Zerin* (1997) 53

9    Cal.App.4th 445, 451; 61 Cal.Rptr.2d 707.)  Money cannot be the subject of

10   conversion unless a specific, identifiable sum is involved.  The theft of a coin

11   collection, for example, could be conversion even though it involves "money."

12   Apart from that, there must be a taking of the specific money at issue, for there to

13   be actionable conversion.  For example, a bank was held liable for conversion of

14   an account where it issued a duplicate passbook and delivered the funds to a third

15   party.  (See *Watson v. Stockton Morris Plan* (1939) 34 Cal.App.2d 393, 403; 93

16   P.2d 855.)  Conversion will also lie where an agent accepts a sum of money to be

17   paid to another and fails to make the payment.  (*Fischer v. Machado* (1996) 50

18   Cal.App.4th 1069; 58 Cal.Rptr.2d 213.)

19        On the other hand, conversion does not lie when there has merely been an

20   overcharge of bank fees by the defendant.  (*McKell v. Washington Mutual* (2006)

21   142 Cal.App.4th 1457; 49 Cal.Rptr.3d 227.)  In *McKell*, there was arguably a

22   "specific sum" of money involved (the amount of the overcharges) – but obviously

23   not in the sense that would support a conversion claim.  Under the law, a specific

24   and identifiable *amount of damage*, is simply not the same as a specific and

25   identifiable *sum of money*.

26        As noted above, the *Zerin* case was cited by plaintiff, in his complaint, as

27   supporting his right to bring a conversion claim.  However, plaintiff cited to an

28   introductory portion of the opinion, where the court was reciting the general rules

1    governing conversion claims.  He ignored the rest of the general rules (adverse to

2    his position), and ignored the actual holding.

3         The issue in *Zerin* was whether an attorney whose clients had received

4    third-party "excess" medical payment benefits was obligated to hold those funds

5    for the benefit of his clients' insurer, on the theory that the policy provision

6    created an equitable lien on the funds the attorney had received on his clients'

7    behalf.  (*Id.* at 450-451.)  The appellate court rejected the insurer's "equitable lien"

8    argument, concluding in part that the insurer had neither detrimentally relied on

9    promises of reimbursement from a particular fund in paying the clients' medical

10   expenses nor forgone pursuit of its rights against the clients based on express or

11   implied promises of repayment.  (*Id.* at 455-456.)  So the conversion claim was

12   *rejected* in the opinion cited by plaintiff.

13        Perhaps most significantly, and dispositive of the issue for this case, is the

14   general conversion rule cited by the *Zerin* court, picking up where plaintiff's

15   citation left off.  The court noted that a contractual right of payment, without more,

16   was <u>not sufficient</u> to support a conversion claim.  (*Id.* at 452 [citation omitted].)

17        In *Imperial Valley L. Co. v. Globe G. & M. Co.*, a farmer operating on

18   leased land failed to pay a percentage of his crop sales profits to the owner of the

19   land, as called for in the lease contract.  The landowner sued for conversion.  The

20   California Supreme Court noted that the lease contract established no title or lien

21   upon the crops, so no conversion claim would lie.  The lease contract merely

22   specified the measure of damages.  (*Imperial Valley L. Co. v. Globe G. & M. Co.*

23   (1921) 187 Cal. 352; 202 P. 129.)

24        The plaintiff's claim in the instant case is akin to the contingent contractual

25   recovery in *Imperial Valley* or to the bank overcharge in *McKell*.  Plaintiff is

26   asking for money back for breach of a warranty, which is a contract.  He's asking

27   for money *in general*, not the specific money he gave to the Toyota dealership (not

28   even to TMS) in payment for his vehicle.  Plaintiff sues under a statute that

1    provides the *measure of damages* for such a claim.  Under the above authorities,

2    that cannot support a conversion claim.

3

4    3.    **PLAINTIFF'S CONVERSION CAUSE OF ACTION IS ENTIRELY**

5    **DERIVATIVE OF, AND BASED SOLELY UPON, TMS' VIOLATION OF**

6    **THE SONG-BEVERLY ACT (LEMON LAW) AND VIOLATES THE**

7    **LIMITATION ON DAMAGES AVAILABLE UNDER THAT ACT.**

8    The availability of "other tort damages" in a Lemon Law case was discussed

9    in *Kwan v. Mercedes-Benz* (1994) 23 Cal.App.4th 174; 28 Cal.Rptr.2d 371.  In

10    that case, the court discussed a plaintiff's right to recover emotional distress

11    damages on a Song-Beverly claim.  The plaintiff argued that his case had been

12    pleaded and tried as a tort.  The court stated that plaintiff's argument was an

13    oversimplification of the record, but nevertheless considered and responded to the

14    argument.  The court ultimately held that such damages were not recoverable.

15    In so holding, the court considered Civil Code section 1790.4, which

16    provides that remedies under the Song-Beverly Act are cumulative to those

17    "otherwise available."  That section was found to be irrelevant because Kwan's

18    proposed tort remedy (again, assuming for the sake of the argument that Kwan's

19    case had been pleaded and tried as a tort) was simply not "otherwise available" – it

20    derived from obligations imposed by the Act.

21    The parties agree that *Kwan* supports the proposition that "you cannot get

22    tort remedies on Song-Beverly claims, unless you also allege other tort claims."  It

23    is defendant's position that the phrase "other tort claims" means just that:  tort

24    claims *other than the violation of the Song-Beverly Act itself*.

25    As noted above, in this case, plaintiff's conversion claim is completely

26    derivative of, and based solely and entirely upon, the (disputed) warranty breach

27    and Lemon Law violation by TMS.  Defendant's failure to repurchase plaintiff's

28    vehicle under the Lemon Law is characterized as a "conversion" of money that

1  should have been paid to plaintiff.  That is not sufficient.

2      The limitation on damages available on a Song-Beverly claim, as set forth in

3  *Kwan*, would be meaningless, if a plaintiff could merely add additional "buzz

4  words" and re-state the claim under some other theory.  In the instant case,

5  plaintiff has merely alleged the equivalent of "Defendant violated the Lemon Law,

6  *and thereby converted money that should have been paid to plaintiff.*"  Obviously,

7  adding the italicized language does nothing to change the fact that the only real

8  claim is of a Lemon Law violation.  The italicized language is meaningless and

9  conclusory.

10      Basically, plaintiff has restated his Lemon Law claim six different ways

11  (causes of action), five of which do not allow for remedies beyond those set forth

12  in the Lemon Law.  The sixth cause of action, for conversion, however, goes too

13  far.

14      Defendant acknowledges that *Kwan* does not foreclose a conversion claim,

15  if there really is one.  But in this case, the plaintiff has not alleged anything that

16  would constitute a conversion.  He has merely alleged a Lemon Law claim.

17

18  4.    **CONCLUSION.**

19      For the foregoing reasons, defendant requests that its motion to dismiss be

20  granted.

21

22      Dated: June 17, 2008        DEMLER, ARMSTRONG & ROWLAND, LLP

23

24                /s/ John W. Myers IV

25                SEAN D. BEATTY
                  JOHN W. MYERS IV

26                Attorneys for defendant Toyota Motor Sales,
                  U.S.A., Inc.

27

28